IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARIUS WASHINGTON, | ) | Case No. 3:22-CV-01634-JPC |
| | ) | |
| Petitioner, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| WILLIAM COOL, Warden, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.   INTRODUCTION

Petitioner, Darius Washington ("Mr. Washington"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Washington is serving a sentence of 28 years after being convicted of rape, kidnapping, and felonious assault.

Mr. Washington asserts seven grounds for relief. Respondent, Warden William Cool ("Warden"), filed an answer/return of writ on March 16, 2023. (ECF No. 7). This matter was referred to me on September 23, 2022, under Local Rule 72.2 to prepare a report and recommendation on Mr. Washington's petition. (*See* ECF non-document entry dated September 23, 2022). For the reasons set forth below, I recommend that Mr. Washington's petition be DISMISSED and/or DENIED. I further recommend that the Court not grant Mr. Washington a certificate of appealability.

## II.   RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Sixth Appellate District summarized the facts as follows:

{¶ 2} A jury trial on the charges commenced on July 16, 2019. A summary of the state's evidence presented relevant to each of the two victims is as follows. Victim, K.B., testified that she met appellant through mutual friends on Facebook. She had met with him face-to-face on two prior occasions and admitted to having sexual relations with him. In the early morning of June 25, 2018, K.B. was staying at a friend's house and was locked out. Responding to a message from appellant, K.B. indicated that she needed a place to stay and he agreed to send an Uber to pick her up and deliver her to his apartment. K.B. testified that she explicitly informed appellant that she did not intend on having sexual relations with him that night.

{¶ 3} After K.B.'s arrival the two shared some alcohol; appellant pulled out and loaded a shotgun and placed it next to his bed. After rebuffing appellant's sexual advances, K.B. attempted to leave; she got the kitchen door six inches open when appellant reached his arm around her neck pulling her back and strangling her until she passed out. K.B. testified that she woke up on the floor with appellant's arm around her neck dragging her back towards his bedroom.

{¶ 4} K.B. stated that she was in and out of consciousness. K.B. stated that she was on appellant's bed and was pinned under appellant on her stomach with her pants around her ankles. K.B. testified that appellant forcibly penetrated her anally and that it was very painful. She stated that she was also being penetrated orally and vaginally with various sex toys. K.B. stated she was crying and appellant asked her to perform oral sex. She complied. Eventually, with appellant's arm around her to keep her in bed, K.B. fell asleep for a few hours. Upon waking, appellant penetrated her vaginally and anally.

{¶ 5} Around noon, appellant ordered her an Uber; she purposely told him the wrong drop off point. Once in the Uber, she told the driver to take her to the hospital. K.B. stated that in the three to four days following the incident she could neither sit nor use the bathroom properly. K.B. state that she had never met or spoken with victim, T.E.

{¶ 6} K.B.'s testimony was corroborated by the treating sexual assault nurse examiner (SANE) who performed an examination of K.B. and collected samples for a rape kit. The SANE testified that K.B. was tearful and agitated at times.

{¶ 7} A forensic scientist at the Ohio Bureau of Criminal Investigation (BCI) received the rape kit samples and performed a DNA analysis of the samples. Relevantly, appellant was included as a contributor of DNA, specifically acid phosphatase which is found in semen and saliva, in K.B.'s anal swabs, underwear cutting, and skin swabs.

2

{¶ 8} As to victim, T.E., she testified that on August 17, 2018, at approximately 6:30-7:00 p.m., she met appellant for the first time at bus stop in downtown Toledo. After talking, the pair realized that they lived near each other and that appellant's brother had previously dated T.E.'s sister. Appellant asked T.E. to come to his home. T.E. stated that she agreed because she was angry at her child's father.

{¶ 9} After arriving at appellant's apartment, T.E. stated that she began helping him clean. T.E. then took a shower because it had been a "long day" and she wanted to clean up. T.E. stated that she put her bra and underwear back on and appellant gave her a shirt to wear. At that point appellant's friend had arrived and the three began drinking. T.E. testified that appellant pulled out a gun from between the couch cushions and retrieved one from the closet, he also had a third gun.

{¶ 10} T.E. testified that she was dizzy from the alcohol and went to lay on appellant's bed. She awoke to a sharp pain and appellant anally penetrating her. T.E. began screaming and fighting him off; appellant, who was laying on top of her reached around and began strangling her. T.E. stated that she lost consciousness. When she "woke up" appellant started strangling her again. T.E. testified that she thought she was going to die. T.E. stated that she then "threw" herself off the bed along with appellant; appellant's friend burst through the door to see what was happening. T.E. then grabbed her underwear and attempted to flee the room but appellant grabbed her arm to stop her. The friend told appellant to let her go and he did.

{¶ 11} T.E. shared the friend's Uber and they dropped her off at her mother's apartment. She banged in the door until she realized that her mother was at work. Eventually a Toledo Police officer, responding to a safety check, found T.E. who reported the rape. He then took her to the hospital. T.E. stated that following the attack she felt scared to be around people and attends a weekly rape survivors group and individual therapy.

{¶ 12} The SANE who examined T.E. testified that she observed bruising on each side of her neck consistent with strangulation. There was bruising around T.E.'s anus. The SANE performed a rape kit. A second BCI forensic scientist testified regarding T.E.'s rape kit findings. As to the anal samples, appellant was excluded from interpretable DNA. A swab from the interior back of T.E.'s underwear testified positive for appellant's DNA.

(ECF No. 7-1, Exhibit 13); *State v. Washington*, No. L-19-1190, 2021 WL 945086, 2021-Ohio-760 (6th Dist. Mar. 12, 2021).

## III.  PROCEDURAL HISTORY

### A.  <u>State Court Conviction</u>

On March 28, 2019, Mr. Washington was indicted in the Lucas County Court of

Common Pleas on: (1) two first-degree felony counts of rape in violation of O.R.C. §§ 2907.02(A)(2) and (B); (2) two second-degree felony counts of felonious assault with a sexual motivation specification in violation of O.R.C. §§ 2903.11(A)(1) and (D) and 2941.147; and (3) two first-degree felony counts of kidnapping with a sexual motivation specification in violation of O.R.C. §§ 2905.01(A)(4) and (C) and 2941.147. (ECF No. 7-1, Exhibit 1). On April 4, 2019, Mr. Washington pled not guilty to all charges. (ECF No. 7-1, Exhibit 2).

At a pretrial conference on July 12, 2019, Mr. Washington made an oral motion for substitution of counsel. Mr. Washington's motion was apparently based in whole or in part on his counsel's refusal to provide him with certain discovery material, including material marked attorneys'-eyes only. (ECF No. 7-1, Exhibit 21). The Sixth Appellate District stated that Mr. Washington became heated, and that the deputy sheriff had to force Mr. Washington to sit in a chair. (ECF No. 7-1, Exhibit 5). The trial judge denied Mr. Washington's motion for a substitution of counsel and warned him that similar conduct at trial would result in his exclusion from the courtroom. *Id*.

The case proceeded to trial. On the first day of trial, Mr. Washington appeared in his prison uniform rather than street clothes. (ECF No. 7-2, PageID # 493). When the trial court asked Mr. Washington why he was wearing his prison clothes, Mr. Washington stated that he did not believe the court would permit him to attend trial in person given the events at the pretrial conference. *Id*. The trial court responded that it wanted to give Mr. Washington another chance to attend the trial in person, but that Mr. Washington needed to confirm that he would behave appropriately. *Id*. at PageID # 493-94. In response, Mr. Washington again asked for a substitution of counsel, resulting in a lengthy colloquy with the court, during which Mr. Washington repeatedly stated that he did not want his current counsel to represent

4

him and that his relationship with counsel had broken down. *Id*. at PageID # 494-500. At one

point, the trial court asked Mr. Washington if he would observe proper courtroom decorum.

Mr. Washington responded that he was "going to be the way I'm supposed to be." (ECF No.

7-2, PageID # 495).

At the conclusion of the exchange, the trial court said that it had already given Mr.

Washington an opportunity to make his case for new counsel at the pretrial conference and

stated that it had heard enough about the issue. (ECF No. 7-2, PageID # 500). The court then

had Mr. Washington removed to a holding cell, where he remained for the entire first day of

trial. Mr. Washington attended the remaining days of the trial in person.

On July 18, 2019, the jury convicted Mr. Washington on all charges. (ECF No. 7-1,

Exhibit 6). On August 1, 2019, the trial court held a sentencing hearing. (ECF No. 7-1, Exhibit

7). The court rejected Mr. Washington's argument that certain of the counts should merge

because they were allied offenses of similar import, and sentenced Mr. Washington to an

aggregate term of 28 years in prison. On September 10, 2019, the court entered a *nunc pro

tunc* entry clarifying its prior sentencing order, which did not change Mr. Washington's total

aggregate sentence. (ECF No. 7-1, Exhibit 8).

### B. Direct Appeal

On August 29, 2019, Mr. Washington, through new appellate counsel, timely filed a

notice of appeal to the Sixth Appellate District. (ECF No. 7-1, Exhibit 9). On July 17, 2020,

Mr. Washington filed his appellate brief, raising the following assignment of error:

> 1. The trial court erred in failing to merge Counts 2 and 3 with Count 1 and Counts
>    5 and 6 with Count 4.

(ECF No. 7-1, Exhibit 10). The State filed a response. (ECF No. 7-1, Exhibit 11). On

November 19, 2020, Mr. Washington filed his reply brief, in which he attempted to raise three

additional assignments of error:

1. The trial court erred in barring appellant from the courtroom during critical stages of appellant's jury trial thereby violating appellant's right to due process and right to confront witnesses.

2. Appellant was denied the effective assistance of counsel at all critical stages of his trial.

3. The jury's verdict was against the manifest weight of the evidence.

(ECF No. 7-1, Exhibit 12).

On March 12, 2021, the Sixth Appellate District affirmed Mr. Washington's conviction and sentence. (ECF No. 7-1, Exhibit 13). The court rejected his argument that the trial court should have merged the counts against him. The court also struck his reply brief because Ohio's appellate rules do not permit new assignments of error to be raised in a reply.

On April 22, 2021, Mr. Washington, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 7-1, Exhibit 14). In his memorandum in support of jurisdiction, Mr. Washington raised the following proposition of law:

1. The Trial Court violated Appellant's rights against Double Jeopardy, as codified in <u>O.R.C. 2941.25</u>, as well as violated his rights to due process of the law by convicting and punishing him based on conduct and a set of offenses determined to be allied to support enhanced punishment under one Ohio statute; then, in the same case, punished him based on the same conduct and same set of offenses determined to <u>NOT</u> be allied to support enhanced punishment under another Ohio statute. Furthermore, the two statutes are in conflict and do not harmonize.

(ECF No. 7-1, Exhibit 15). On June 8, 2021, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 7-1, Exhibit 17).

**C.  <u>Rule 26(B) Motion to Reopen Appeal</u>**

On September 15, 2021, Mr. Washington, acting *pro se*, filed a delayed application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B), asserting that he received the ineffective assistance of appellate counsel. (ECF No. 7-1, Exhibit 18). Mr. Washington also

argued that his Rule 26(B) application was untimely only because he initially mailed it to the Sixth Appellate District courthouse rather than to the clerk's office. On October 14, 2021, Mr. Washington filed a motion for leave to file an amended application, in which he sought to raise an additional assignment of error. (ECF No. 7-1, Exhibit 20).

On November 19, 2021, the Sixth Appellate District denied Mr. Washington's application to reopen, holding that the application was untimely and that Mr. Washington failed to demonstrate that he received the ineffective assistance of appellate counsel. (ECF No. 7-1, Exhibit 21). Mr. Washington filed a motion for reconsideration, which the Sixth Appellate District denied on December 17, 2021. (ECF No. 7-1, Exhibits 22, 24).

On January 27, 2022, Mr. Washington filed a notice of appeal to the Ohio Supreme Court. (ECF No. 7-1, Exhibit 25). In his memorandum in support of jurisdiction, Mr. Washington raised the following assignments of error:

1. Appellate Court erred by not filing Appellant's timely 26(B) Application for Reopening his Direct Appeal, and making Appellant mail it contrary to Ohio App. R. 26(B), violating Appellant's rights to due process and equal protection of the law.

2. Appellate Court erred by denying Appellant's 26(B) Application for Reopening, for failure to set fourth [*sic*] a colorable claim of ineffective assistance of Appellate Counsel.

(ECF No. 7-1, Exhibit 26). On March 15, 2022, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 7-1, Exhibit 28).

**D.  Federal Habeas Action**

On September 1, 2022, Mr. Washington, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Washington's habeas petition raises seven grounds for relief:[1]

---

[1] Mr. Washington's grounds for relief are reproduced verbatim.

1. Trial court failed to merge counts 2 and 3 with Count 1, and counts 5 and 6 with count 4, violating petitioner's rights under the Due Process Clause.

2. Trial court violated petitioner's United States constitutional right to confront witnesses against him during his jury trial.

3. Trial court abuse of discretion for not granting petitioner new counsel when there was a clear irrevocable breakdown in communication with trial's counsel/client relationship violating petitioner's U.S.C. rights to Due Process of Law and effective assistance of counsel.

4. Trial court violated petitioner's U.S.C. right to effective assistance of trial counsel.

5. Trial court violated petitioner's U.S.C. right under the Due Process Clause and right to a fair trial by not allowing petitioner to be present during all critical stages of his trial.

6. Appellate counsel was ineffective for presenting new assignments of error in petitioner's reply brief that were not raised in petitioner's initial direct appeal brief.

7. Trial court violated petitioner's U.S.C. right under Due Process Clause and the right to a fair trial by denying petitioner a remote contemporaneous video proceeding.

*Id*. The Warden filed an answer/return of writ on March 16, 2023. (ECF No. 7). Mr. Washington filed a traverse on September 11, 2023. (ECF No. 10).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Lucas County Court of Common Pleas sentenced Mr. Washington, and the Court takes

judicial notice that Lucas County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Washington's § 2254 petition.

**B.** **Exhaustion and Procedural Default**

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

9

A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new, reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's

decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

Mr. Washington asserts seven grounds for relief. The Warden argues that Mr. Washington procedurally defaulted on his second through seventh grounds and that all seven

grounds fail on the merits. I agree with the Warden on both arguments.

### A.  Ground One: Failure to Merge Counts

In his first ground for relief, Mr. Washington asserts that the trial court violated his rights under the due process clause by failing to merge the two kidnapping and felonious assault counts into the two rape counts. The Warden responds that Mr. Washington's claim is not cognizable in a federal habeas proceeding. I agree.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be twice put in jeopardy" for "the same offense." U.S. CONST. amend. V. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). "[I]f it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Ohio v. Johnson*, 467 U.S. 493, 499 n. 8 (1984); *see also Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) ("once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination").

Here, the Sixth Appellate District expressly held that the Ohio legislature had authorized cumulative punishments because each charge Mr. Washington faced was associated with a separate and identifiable harm. (ECF No. 7-1, Exhibit 13, ¶¶ 23-33). Mr. Washington's argument that the court erred in making that determination is not cognizable in this proceeding. *See Chester v. Fender*, No. 5:22-CV00954-SO, 2024 WL 3927098, at *15 (N.D. Ohio May 16, 2024) ("whether offenses are allied and therefore merge for sentencing is a matter of state law and not cognizable on habeas review") (citing *Minor v. Wainwright*, No. 19-3206, 2019 WL 2489656, at *2 (6th Cir. June 6, 2019)), *report and recommendation adopted*, 2024 WL 3925888 (N.D. Ohio Aug. 23, 2024); *Randle v. Turner*, No. 3:19cv1166,

14

2021 WL 3566433, at *5 (N.D. Ohio Feb. 17, 2021) (argument that counts should have merged under Ohio law was not cognizable because it was "based on Ohio sentencing laws and the interpretation of those laws (such as consecutive sentences) is not cognizable on federal habeas review") (citing *Wilson v. Corcoran*, 562 U.S. 1, 8 (2010)), *report and recommendation adopted*, 2021 WL 3239447 (N.D. Ohio Feb. 17, 2021). I therefore recommend that the Court dismiss Mr. Washington's first ground for relief as non-cognizable.

## B. <u>Grounds Two, Five, and Seven: Exclusion from First Day of Trial</u>

In his second ground for relief, Mr. Washington asserts that the trial court violated his Sixth Amendment right to confront his accusers when the court excluded him from the first day of trial. In his fifth ground for relief, Mr. Washington asserts that his exclusion also violated his rights under the Due Process Clause of the Fifth Amendment. In his seventh ground for relief, Mr. Washington asserts that the trial court violated his due process rights because the court did not provide him with a contemporaneous video feed of the first day of trial after removing him from the courtroom. Because these three grounds are related, I will address them together.

### 1. *Procedural Default*

The Warden first argues that Mr. Washington procedurally defaulted on grounds two, five, and seven because he failed to fairly present them to the Ohio courts while state court avenues remained open to him, and because the Ohio courts declined to consider those arguments on procedural grounds when Mr. Washington did raise them.

"[F]ederal courts ordinarily may not 'consider a claim in a *habeas* petition that was not "fairly presented" to the state courts' absent cause and prejudice to excuse the procedural default." *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). "[I]t does not suffice to only present

the claim to a state trial court; rather, the petitioner must raise the claim in state court and 'pursue [it] through the state's ordinary appellate review procedures." *Id.* at 751-52 (quoting *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009)).

During his direct appeal to the Sixth Appellate District, Mr. Washington raised only a single assignment of error in his opening brief, arguing that the trial court erred in failing to merge the counts against him at sentencing. (ECF No. 7-1, Exhibit 10). He did not make any arguments relating to his exclusion from the courtroom, and thus did not fairly present grounds two, five, and seven in his opening brief.

Mr. Washington attempted to raise his second and fifth grounds for relief in his reply brief. (ECF No. 7-1, Exhibit 12). However, the Sixth Appellate District struck Mr. Washington's reply brief because Ohio's appellate rules do not permit new assignments of error to be raised in a reply. (ECF No. 7-1, Exhibit 13, ¶ 17 n.1). The Sixth Appellate District's application of a procedural bar means that Mr. Washington's attempt to raise additional rounds through his reply brief did not eliminate the procedural default. *See*, *e.g.*, *Theriot v. Vashaw*, 982 F.3d 999, 1005 (6th Cir. 2021) (holding that petitioner procedurally defaulted on claim under *Maupin* where petitioner failed to comply with state appellate rule requiring appellants to support claims with sufficient argumentation and appellate court actually enforced rule).

Mr. Washington also did not raise grounds two, five, or seven in his direct appeal to the Ohio Supreme Court. Instead, his memorandum in support of jurisdiction raised only a single proposition of law, asserting that the trial court erred in failing to merge counts. (ECF No. 7-1, Exhibit 15). Mr. Washington's failure to present his second, fifth, and seventh grounds to the Ohio Supreme Court means that he has procedurally defaulted on them. *See*

16

*Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (holding that petitioner must raise a claim at every stage of the state review process to avoid a procedural default); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review").

After the Ohio courts affirmed his conviction and sentence on direct appeal, Mr. Washington filed a Rule 26(B) application to reopen his direct appeal, alleging that he received the ineffective assistance of appellate counsel. (ECF No. 7-1, Exhibit 18). In his Rule 26(B) application, Mr. Washington raised arguments corresponding to grounds two and five. *Id*. He subsequently filed a motion for leave to amend his application, seeking to add an argument corresponding to ground seven (failure to provide him with a contemporaneous video feed) as well. (ECF No. 7-1, Exhibit 20).

A Rule 26(B) application is the primary mechanism under Ohio law by which a defendant may raise an ineffective assistance of appellate counsel claim. *See Smith v. Warden, Toledo Corr. Inst*., 780 F. App'x 208, 223 (6th Cir. 2019). However, the Sixth Appellate District denied Mr. Washington's application as untimely. (ECF No. 7-1, Exhibit 21). It is well-settled that an untimely Rule 26(B) application results in a procedural default under *Maupin*. *See Parker v. Bagley*, 543 F.3d 859, 862 (6th Cir. 2008) (holding that untimeliness of Rule 26(B) application was an adequate an independent state ground such that Ohio courts' denial of Rule 26(B) application as untimely resulted in procedural default). The fact that the Sixth Appellate District analyzed the merits of Mr. Washington's claims in the alternative does not eliminate the procedural default. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1988) (holding that a state court "need not fear reaching the merits of a federal claim in an alternative holding" so long as the state court explicitly invokes a state procedural bar) (emphasis

omitted).

Mr. Washington argues that his application was late only because he inadvertently mailed it to the Sixth Appellate District courthouse rather than to the court clerk. He also argues that, when the courthouse returned his improper filing to him, the postal service accidentally destroyed part of his application, which forced him to spend additional time preparing a new application. He asserts that the Sixth Appellate District should not have rejected his application as untimely under those circumstances. However, the Sixth Appellate District considered and rejected Mr. Washington's arguments when it denied his motion for reconsideration (ECF No. 7-1, Exhibit 24), and I must defer to the Sixth Appellate District's interpretation that Mr. Washington's application was untimely notwithstanding his application. *See Allen*, 845 F.2d at 614. Mr. Washington has thus procedurally defaulted on grounds two, five, and seven.

Mr. Washington's procedural default can be excused if he can demonstrate either (1) cause and prejudice; or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Mr. Washington argues that he has cause to excuse his procedural default because his appellate counsel was ineffective in failing to raise meritorious grounds for relief in his opening brief to the Sixth Appellate District. It is true that ineffective assistance of appellate counsel can constitute cause to excuse a procedural default. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). "However, 'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'" *Id*. (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Here, Mr. Washington procedurally defaulted on his ineffective assistance of appellate counsel claim because he failed to timely file his Rule 26(B) application, and any

alleged deficiencies in his appellate counsel's performance thus cannot constitute cause to excuse the procedural default. Mr. Washington does not provide any other basis to excuse his procedural default. Nor has he presented new evidence demonstrating that he is actually innocent of the offenses for which he was convicted, as required to establish a fundamental miscarriage of justice. *See Schlup*, 513 U.S. at 324. Accordingly, I recommend that the Court dismiss grounds two, five, and seven as procedurally defaulted.

### 2.  Merits

Alternatively, I recommend that the Court deny grounds two, five, and seven on the merits. A criminal defendant has a right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Snyder v. Massachusetts*, 291 U.S. 97, 105-106 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964); *see also Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) ("a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"). "A defendant's right to be physically present at every stage of his trial has a longstanding tradition in this country's criminal jurisprudence, with roots in both the Due Process Clause and the Confrontation Clause of the Sixth Amendment." *Gray v. Moore*, 520 F.3d 616, 622 (6th Cir. 2008) (citations omitted).

The Supreme Court has "expressly rejected," however, the position that "a trial can never continue in the defendant's absence." *Illinois v. Allen*, 397 U.S. 337, 342 (1970). Rather, while courts "must indulge every reasonable presumption against the loss of constitutional rights . . . a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and

disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id*. at 343 (citation omitted). "Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id*.

The Sixth Circuit has interpreted *Allen* as clearly establishing, for purposes of AEPDA, that a trial court must warn a defendant that he will be removed if unruly behavior continues before the trial judge is entitled to remove the defendant. *See Gray*, 520 F.3d at 623 ("in light of the explicit language used by the Supreme Court [in *Allen*], we conclude that the Ohio appellate court unreasonably applied *Allen* when it affirmed Gray's removal despite the absence of a prior warning by the trial court"). As the court held, "the proper reading of *Allen* requires a trial court to give the accused one last chance to comply with courtroom civility before committing the 'deplorable' act—in the *Allen* Court's words—of removing that person from his own trial." *Id*. at 624 (quoting *Allen*, 397 U.S. at 347).

Here, the trial court removed Mr. Washington from the courtroom for the first day of trial, which included voir dire, opening statements, and witness testimony. (ECF No. 7-2). The Sixth Appellate District summarized the events leading to Mr. Washington's exclusion as follows:

> In the present matter, at a pretrial held the Friday before trial, appellant orally moved for new counsel. According to the subsequent opposition filed by the state, during the hearing appellant frequently interrupted the judge, the state, and his own counsel and refused to engage in the court's inquires. He became "irate" and raised his voice and refused to follow the directions of either the court or security. The deputy sheriff had to force him to sit in a chair for safety and security reasons. At that time, appellant was warned that obstreperous conduct would result in his removal from the courtroom during trial.
>
> On the morning of trial, a hearing was held regarding the presence of appellant in the courtroom. The trial judge expressed concern that appellant would again be disruptive and that it could impact the trial process. Appellant was asked whether he would be able to "conform to the conduct" that was expected in the courtroom. He responded:

"I'm going to be the way I'm supposed to be" and continued to request that new counsel be appointed. The court then ordered appellant to be taken to a holding cell with a video feed. The court explained:

> You'll be able to observe witnesses testifying. I think there's a camera pointed at me. You'll be able to observe my ugly mug down there. And your counsel will be available to speak to you when he needs to ask questions or whatever. I mean, it's your choice whether you want to speak to him or not, but, I mean, you have the right to say, I don't like this, you need to ask this, or you need to do this. I mean, you have a right to say that to him while he's defending you so.

Appellant was informed that the next morning he would again be given the opportunity to remain in the courtroom. Appellant was present in courtroom the second day through the end of trial.

(ECF No. 7-1, Exhibit 21).

The Sixth Appellate District addressed the merits of Mr. Washington's arguments regarding his exclusion as an alternative holding when it denied his Rule 26(B) application to reopen his appeal. (ECF No. 7-1, Exhibit 21). The Sixth Appellate District first cited the correct legal standard, noting that, under *Allen*, Mr. Washington could be removed from the courtroom if the trial could not reasonably be conducted in his presence in light of his disruptive behavior. The court then held that the trial court did not abuse its discretion in removing Mr. Washington, concluding that "[t]he court had reason to believe that [Mr. Washington] would be disruptive" given his behavior at the pretrial conference and his colloquy with the trial court at the beginning of the first day of trial. *Id*. at PageID # 403.

It is not entirely clear to me that Mr. Washington's conduct on the first day of trial rose to a level that would justify his removal from the courtroom under *Allen*. It is true that Mr. Washington repeatedly insisted that he would like new counsel appointed. It is also true that Mr. Washington engaged in unruly, disruptive behavior at the pretrial conference. However, while the transcript from the first day of trial does not indicate Mr. Washington's demeanor or tone of voice, it does not appear that he used profanity, made threats, acted out

physically, or needed to be restrained. *Id*. at PageID # 494-500. And while Mr. Washington stated that he was "going to be the way I'm supposed to be," he later clarified that he meant he intended to behave during the trial. *Id*. at PageID # 496. There is thus potential room to doubt the Sixth Appellate District's conclusion that Mr. Washington's behavior justified his removal from the courtroom. *See*, *e.g.*, *Brown v. Lafler*, No. 07-11685, 2009 WL 2591620, at *6 (E.D. Mich. Aug. 19, 2009) (concluding that defendant was not sufficiently disruptive to warrant removal where defendant was "merely informing the trial court of his concerns about his attorney").

I need not decide whether the Sixth Appellate District unreasonably applied *Allen*, however, as "[w]hen a court conducts criminal proceedings outside the presence of a defendant, the lower court's actions are subject to harmless error review." *Spikes v. Mackie*, 541 F. App'x 637, 649 (6th Cir. 2013) (citing *United States v. Gallagher*, 57 F. App'x 622, 626-27 (6th Cir. 2003)). "On habeas review, the test for harmless error is whether it had a 'substantial and injurious effect or influence' on the result of the proceeding." *Id*. at 649-50 (quoting *Fry v. Pliler*, 551 U.S. 112, 116 (2007)).

Even assuming Mr. Washington's removal from the courtroom was inconsistent with *Allen*, he has not shown that it had a substantial and injurious effect or influence on the proceedings. Rather, it is undisputed that Mr. Washington was able to participate in the proceedings by telephone and that he was permitted to confer with his counsel. Nor has Mr. Washington identified how his exclusion had a substantial and injurious effect or influence on the proceedings during the first day of trial. While he argues that one of the alleged victims was permitted to identify a photograph of him rather than having to identify him in person, he does not explain how the identification of a photograph had a substantial and injurious

effect on his case. Under the circumstances presented here, I conclude that any error was harmless. *See Lee v. Davids*, No. 1:19-cv-595, 2020 WL 358722, at *5 (W.D. Mich. Jan. 22, 2020) (holding that any error in removing defendant was harmless where, among other things, defendant listened to proceedings electronically and only missed a limited portion of trial); *Brown*, 2009 WL 2591620 at *7-8 (holding that any error in defendant's removal from courtroom was harmless where defendant was warned prior to removal, was able to listen to proceedings, defense counsel was able to consult with defendant, trial court instructed jurors not to draw any inference from defendant's absence, and there was significant evidence of defendant's guilt). I thus alternatively recommend that the Court deny Mr. Washington's second and fifth grounds for relief as without merit.

I also recommend that the Court alternatively deny on the merits Mr. Washington's seventh ground for relief, which alleges that his due process rights were violated because he was not provided with a contemporaneous video feed after the trial court excluded him from the courtroom. The Sixth Appellate District addressed Mr. Washington's argument on the merits when it denied his Rule 26(B) application to reopen his appeal, holding that the lack of a live video feed did not violate Mr. Washington's constitutional rights. (ECF No. 7-1, Exhibit 21, PageID # 403). I agree. Mr. Washington does not cite to any Supreme Court precedent holding that a defendant removed for disruptive behavior must be provided with a contemporaneous video feed of the proceedings. Instead, Mr. Washington argues that a contemporaneous video feed was required under Ohio Criminal Rule 43(A)(2). As noted above, however, habeas relief is not available for alleged errors of state law. *See Estelle*, 502 U.S. at 67-68. Mr. Washington's seventh assignment of error is thus without merit.

### C.  Denial of Motion for Substitution of Counsel

In his third ground for relief, Mr. Washington asserts that the trial court violated his

23

Sixth Amendment right to counsel when the court denied his request for a substitution of counsel after the relationship between Mr. Washington and his counsel broke down. The Warden again argues that Mr. Washington has procedurally defaulted on this claim and that it fails on the merits. I agree.

### 1. Procedural Default

As with Mr. Washington's claims regarding his exclusion from trial, he has procedurally defaulted on his third ground for relief because he did not fairly present his substitution of counsel claim on direct appeal and because the Ohio courts rejected his claim on procedural grounds when he did attempt to raise it. Mr. Washington did not raise a substitution of counsel claim in his opening brief to the Sixth Appellate District, and the Sixth Appellate District struck his reply brief (which attempted to raise the claim) for failure to comply with Ohio's appellate rules. (ECF No. 7-1, Exhibits 10, 12). Mr. Washington also again failed to present a substitution of counsel claim in his direct appeal to the Ohio Supreme Court. (ECF No. 7-1, Exhibit 15). Finally, when Mr. Washington attempted to raise the claim in his Rule 26(B) application, the Sixth Appellate District denied the application as untimely. (ECF No. 7-1, Exhibit 21). As a result, Mr. Washington has procedurally defaulted on his third ground for relief. *See Wagner*, 581 F.3d at 418; *Alley*, 307 F.3d at 385; *Parker*, 543 F.3d at 862.

For the reasons discussed above, Mr. Washington has not established cause and prejudice to excuse his procedural default. Nor has he provided new, reliable evidence demonstrating that he is actually innocent of the charged offenses. I recommend that the Court dismiss Mr. Washington's third ground for relief as procedurally defaulted.

### 2. Merits

Alternatively, I recommend that the Court deny Mr. Washington's third ground for

relief on the merits. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. While the Sixth Amendment guarantees the right to counsel, however, it does not contain a right to a "meaningful" relationship with counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983). In addition, the right to counsel of one's choice "does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *see also United States v. Green*, 388 F.3d 918, 921-22 (6th Cir. 2004) ("The Sixth Amendment right to counsel 'does not guarantee that a criminal defendant will be represented by a particular attorney'") (quoting *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 1989)).

An indigent defendant who is dissatisfied with his or her appointed counsel "must demonstrate 'good cause' to warrant substitution of counsel." *United States v. Marrero*, 651 F.3d 453, 464 (6th Cir. 2011). "In analyzing whether a state trial court unreasonably applied clearly established federal law when it denied a defendant's motion to substitute counsel, the following four factors are controlling: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; (3) whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Cobb v. Warden, Chillicothe Corr. Inst.*, 466 F. App'x 456, 460 (6th Cir. 2012). "A disagreement between the defendant and defense counsel over legal strategy does not constitute good cause requiring substitution of counsel, nor does a defendant's unilateral decision not to cooperate with court appointed counsel." *Stein v. Sheldon*, No. 3:20-CV-02722-SL, 2023 WL 10354266, at *17

(N.D. Ohio Sept. 25, 2023) (quoting *Miller v. Carl*, No. 21-11458, 2023 WL 3010169, at *9

(E.D. Mich. Apr. 19, 2023)), *report and recommendation adopted*, 2024 WL 706991 (N.D.

Ohio Feb. 21, 2024).

The Sixth Appellate District addressed the merits of Mr. Washington's claim when it

denied his Rule 26(B) application to reopen his appeal.[2] In rejecting Mr. Washington's

argument, the Sixth Appellate District held as follows:

> At the July 12, 2019 pretrial, appellant's request for new counsel was based, at least
> in part, on his desire to review certain discovery items provided by the state, some
> of which were marked "Counsel Only." Appellant further asserted that counsel failed to
> keep him apprised of the "progression" of his case and that there had been a complete
> breakdown in communication.
>
> An indigent defendant is entitled to appointed counsel who is competent and effective.
> *Strickland*, 466 U.S. at 685-686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The
> defendant is entitled to new appointed counsel only upon a showing of "good cause,
> such as a conflict of interest, a complete breakdown in communication or an
> irreconcilable conflict which leads to an apparently unjust verdict." *United States v.
> Calabro*, 467 F.2d 973, 986 (2d Cir.1972); *see State v. Murphy*, 91 Ohio St.3d 516,
> 523, 747 N.E.2d 765 (2001). The substitution of counsel is a matter left to the
> discretion of the trial court. *Calabro* at 986; *State v. Jones*, 91 Ohio St.3d 335,342,
> 744 N.E.2d 1163 (2001). The trial court's decision is reviewed under an abuse of
> discretion standard. *Murphy* at 523, quoting *State v. Cowans*, 87 Ohio St.3d 68, 73,
> 717 N.E.2d 298 (1999).
>
> Reviewing the record before us, we cannot say that the trial court abused its discretion
> when it denied appellant's oral motion requesting new counsel be appointed. There is
> nothing to suggest that any breakdown in the attorney-client relationship resulted in
> prejudice to appellant. Appellant's proposed fifth assignment of error is not well-
> taken.
>
> (ECF No. 7-1, Exhibit 21).

Applying AEDPA deference, the Sixth Appellate District's holding that Mr.

Washington was not prejudiced by the trial court's denial of his motion was not contrary to

---

[2] While the Sixth Appellate District reached the merits as an alternative holding to its primary holding that Mr.
Washington's Rule 26(B) application was untimely, its adjudication is nonetheless entitled to AEDPA
deference. *See Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) ("we give AEDPA deference to a ruling
on the merits despite the fact that the reasoning was given as an alternative to a primary ground for decision—
in this case, the court of appeals's dismissal of the Rule 26(B) application as untimely").

or an unreasonable application of controlling law. "Federal courts have applied harmless error analysis to claims concerning the substitution of appointed counsel." *Harlan v. Lafler*, No. 2:09-CV-14524, 2011 WL 6131091, at *7 (E.D. Mich. Dec. 8, 2011) (citing cases); *see also Bullard v. Jackson*, No. 18-1735, 2018 WL 4735626, at *4 (6th Cir. Sept. 19, 2018) (holding that reasonable jurists would not debate conclusion that petitioner was not entitled to habeas relief on substitution of counsel claim where petitioner was unable to show he was prejudiced by denial of request for substitute counsel). Mr. Washington does not assert that the performance of his trial counsel was deficient during the trial as a result of the alleged breakdown in the parties' relationship. And, as discussed below, there is no merit to Mr. Washington's assertion that his trial counsel was ineffective in failing to object to Mr. Washington's removal from the courtroom on the first day of trial. Thus, even assuming there was a breakdown in the parties' relationship that could have justified the appointment of new counsel, the trial court's ruling did not prejudice Mr. Washington. Accordingly, I alternatively recommend that the Court deny Mr. Washington's third ground for relief because it is without merit.

### D. Ground Four: Ineffective Assistance of Trial Counsel

In his fourth ground for relief, Mr. Washington asserts that he was denied the effective assistance of trial counsel in violation of his Sixth Amendment rights because counsel failed to object to Mr. Washington's removal from the courtroom on the first day of trial. The Warden argues that this claim is procedurally defaulted and that it fails on the merits. I agree.

#### 1. Procedural Default

The procedural default analysis mirrors the analysis for Mr. Washington's other claims. He did not present an ineffective assistance of trial counsel claim in his opening brief on direct appeal, and the Sixth Appellate District struck his reply brief attempting to raise the

27

claim. (ECF No. 7-1, Exhibits 10, 12). Mr. Washington also did not raise the claim in his direct appeal to the Ohio Supreme Court, and the Sixth Appellate District denied his Rule 26(B) application as untimely. (ECF No. 7-1, Exhibits 15, 21). Mr. Washington has therefore procedurally defaulted on his fourth ground for relief. *See Wagner*, 581 F.3d at 418; *Alley*, 307 F.3d at 385; *Parker*, 543 F.3d at 862. Mr. Washington also has not established cause and prejudice to excuse the default and has not demonstrated that he is actually innocent of the charged offenses. Accordingly, I recommend that the Court dismiss Mr. Washington's fourth ground for relief as procedurally defaulted.

### 2. *Merits*

Alternatively, I recommend that the Court deny Mr. Washington's claim on the merits because the Sixth Appellate District reasonably determined that Mr. Washington did not receive the ineffective assistance of trial counsel.

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The *Strickland* standard is "extremely deferential" because "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir.

2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Id*. (quoting *Strickland*, 466 U.S. at 687).

Mr. Washington initially argues that the *Strickland* standard does not apply because he was constructively denied counsel under *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court held that certain levels of performance by counsel are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id*. at 658. Thus, prejudice is presumed where (1) a defendant "is denied counsel at a critical stage of his trial"; or (2) counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id*. at 659. Here, Mr. Washington was not denied counsel at any stage of the proceedings. Instead, Mr. Washington himself was excluded while his counsel remained in the courtroom to advocate on his behalf. Mr. Washington also has not established that his counsel entirely failed to subject the prosecution's case to meaningful adversarial testing. I will therefore apply the *Strickland* standard to Mr. Washington's ineffective assistance of trial counsel claim.

The Sixth Appellate district addressed Mr. Washington's claim on the merits when it denied his Rule 26(B) application. Where the state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so

29

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. ... An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. ... Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

Here, the Sixth Appellate District held that the decision of Mr. Washington's trial counsel not to object to his removal fell within the realm of sound trial strategy because "had [Mr. Washington] been disruptive during trial it could have negatively impacted the jury." (ECF No. 7-1, Exhibit 21, PageID # 403). Applying the double layer of deference under AEDPA, the Sixth Appellate District's decision was not contrary to or an unreasonable application of controlling law. Rather, as the court reasonably held, Mr. Washington's behavior at the pretrial conference and his colloquy with the court on the first day of trial raised the possibility that Mr. Washington might behave disruptively in a manner that would impair his defense. As the Warden also argues, the impact of potential disruptive behavior may have been magnified in this case, given that Mr. Washington was charged with committing violent crimes, including rape, kidnapping, and assault. There is thus a reasonable argument that the performance of Mr. Washington's trial counsel satisfied *Strickland*'s deferential standard, and I alternatively recommend that the Court deny Mr. Washington's fourth ground for relief in on the merits.

**E.  Ground Six: Ineffective Assistance of Appellate Counsel**

Finally, in his sixth ground for relief, Mr. Washington argues that his appellate counsel was ineffective in attempting to raise new grounds for relief in the reply brief during his direct

appeal even though Ohio law does not permit appellants to raise new arguments in a reply.

As noted above, Mr. Washington procedurally defaulted on his ineffective assistance of appellate counsel claim because he did not timely file his Rule 26(B) application, and because the Sixth Appellate District denied his application as untimely. *See* ECF No. 7-1, Exhibit 21;  *Parker*, 543 F.3d at 862. Accordingly, I recommend that the Court dismiss Mr. Washington's sixth ground for relief as procedurally defaulted.

Alternatively, I recommend that the Court deny Mr. Washington's sixth ground for relief because the Sixth Appellate District reasonably determined that Mr. Washington did not receive the ineffective assistance of appellate counsel.

The right to effective assistance of counsel extends through the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 393-94 (1985). Indeed, "the services of a lawyer will for virtually every layman be necessary to present an appeal in a format suitable for appellate consideration on the merits." *Id.* at 393. However, "the *Strickland* performance standard does not require an attorney to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Indeed, omitting weak arguments on appeal, "far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). Thus, to show that appellate counsel was ineffective in raising one argument over another, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did not present.'" *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

Mr. Washington argues that his appellate counsel was ineffective for failing to raise several arguments in the opening appellate brief during his direct appeal, including that: (1) the trial court violated his constitutional rights by excluding him from the first day of trial; (2) he received the ineffective assistance of trial counsel; (3) his conviction was against the manifest weight of the evidence; and (4) the trial court violated his right to counsel by denying his motion for a substitution of counsel. The Sixth Appellate District considered and rejected Mr. Washington's constitutional arguments on the merits as an alternative holding when it denied his Rule 26(B) application. As discussed above, the Sixth Appellate District's decision on each of those issues was not contrary to or an unreasonable application of governing law. Mr. Washington also has not shown that there was any merit to his manifest weight of the evidence argument given the strength of the evidence against him, which included witness testimony from the alleged victims. As a result, the grounds that appellate counsel omitted were not "clearly stronger" than the issue that Mr. Washington's appellate counsel did present. *Caver*, 349 F.3d at 348. I therefore alternatively recommend that the Court deny Mr. Washington's sixth ground for relief because it is without merit.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. <u>Legal Standard</u>

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden

for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B.  <u>Analysis</u>**

Mr. Washington has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Washington's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also

recommend that the Court not grant him a certificate of appealability.

Dated:  January 13, 2025

*/s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to

object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).