## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DARIUS WASHINGTON, | ) | Case No. 3:22-cv-1634 |
| | ) | |
| Petitioner, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jennifer D. Armstrong |
| WILLIAM COOL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

Petitioner Darius Washington, a prisoner in State custody, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Magistrate Judge recommends denying and dismissing Petitioner's claims. Petitioner objects to that recommendation. For the following reasons, the Court **OVERRULES** Petitioner's objections, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **DENIES** and **DISMISSES** the petition for a writ of habeas corpus. Further, the Court **DECLINES** to issue a certificate of appealability.

## FACTUAL AND PROCEDURAL BACKGROUND

This petition for writ of habeas corpus arises from a conviction in State court. Unless the habeas petitioner demonstrates otherwise with clear and convincing evidence, federal courts presume that a State court's findings of fact are correct. *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013).

### A.     Indictment, Trial, and Conviction.

On March 28, 2019, a grand jury indicted Darius Washington on the following charges:  two first-degree felony counts of rape under Sections 2907.02(A)(2) and 2907.02(B) of the Ohio Revised Code; two second-degree felony counts of felonious assault with a sexual motivation specification under Sections 2907.02(A)(2), 2907.02(B), and 2941.147; and two first-degree felony counts of kidnapping with a sexual motivation specification under Sections 2905.01(A)(4), 2905.01(C), and 2941.147.    (ECF No. 7-1, PageID #105–08.)    The charges account for Mr. Washington's actions with two different women on two separate days.  (*Id.*)

At a pre-trial hearing in the State trial court on June 6, 2019, Petitioner made an oral motion for substitution of counsel, which was denied.  (*Id.*, PageID #464.)  At another pre-trial hearing on July 12, 2019, Mr. Washington made another oral motion for substitution of counsel.  (*Id.*, PageID #113.)  Mr. Washington repeatedly interrupted the judge, his own counsel, and prosecutors during the hearing.  (*Id.*, PageID #402.)  The deputy sheriff forced Mr. Washington to sit in a chair "for safety and security reasons," and he "was warned that obstreperous conduct would result in his removal from the courtroom."  (*Id.*)  Eventually, he was escorted out of the courtroom.  (ECF No. 7-2, PageID #492.)  On July 15, 2019, the State trial court denied the motion for substitution of counsel because of appointed counsel's "vast experience in handling criminal trials."  (ECF No. 7-1, PageID #121.)

At the beginning of the trial on July 16, 2019, the State trial court asked Mr. Washington if he would behave in a manner more conducive to courtroom decorum.  (ECF No. 7-2, PageID #493–95.)  Mr. Washington responded to these

questions by stating that he did not want his attorney to represent him, which resulted in a prolonged discussion about the issue. (*Id.*, PageID #494–500.) The State trial court stated that it had already addressed the matter. (*Id.*, PageID #500.) Eventually, because Mr. Washington did not agree to comply with courtroom decorum and did not drop the issue regarding substitution of counsel, the State trial court forced Mr. Washington to view the first day of trial from his holding cell, where he was able to hear the proceedings and communicate with his lawyer by phone. (*Id.*, PageID #500, #683, & #940–41.) Mr. Washington was present in the courtroom for the rest of the trial. (*Id.*, PageID #719.)

On July 19, 2019, the jury found Mr. Washington guilty on all counts. (ECF No. 7-1, PageID #122.) At his sentencing hearing, counsel for Mr. Washington argued that the State trial court should merge his counts. (*Id.*, PageID #123; ECF No. 7-2, PageID #1026.) The court rejected this argument and sentenced him to twenty-eight years in prison. (ECF No. 7-1, PageID #123–24.)

### B.    Direct Appeal

Through new appellate counsel, Mr. Washington raised one assignment of error on appeal: "The trial court erred in failing to merge Counts 2 and 3 with Count 1 and Counts 5 and 6 with Count 4." (*Id.*, PageID #139.) On the basis of conduct on June 25, 2018 with one of the victims, Counts 1, 2, and 3 charged Mr. Washington with, respectively: rape, felonious assault with a specification of sexual motivation, and kidnapping with a specification of sexual motivation. (*Id.*, PageID #105–06.) On the basis of conduct on August 17, 2018 involving a different victim, Counts 4, 5, and 6 charge Mr. Washington with the same offenses: rape, felonious assault with a

3

specification of sexual motivation, and kidnapping with a specification of sexual motivation.  (*Id.,* PageID #106–08.)

After the State responded to his brief, Mr. Washington replied and raised three new assignments of error:  (1) "The trial court erred in barring appellant from the courtroom during critical stages of appellant's jury trial thereby violating appellant's right to due process and right to confront witnesses"; (2) the "Appellant was denied effective assistance of counsel at all critical stages of his trial"; and (3) "The jury's verdict was against the manifest weight of evidence."  (*Id.*, PageID #173.)

On March 12, 2021, the State appellate court determined that the trial court did not err in failing to merge Counts 2 and 3 with Count 1 or Counts 5 and 6 with Count 4.  (*Id.*, PageID #185 & #195–96.)  The court reasoned that Counts 2 and 3 should not merge with Count 1 because they were of a dissimilar import, meeting the requirement for a conviction of distinct offenses under Section 2941.25(B) of the Ohio Revised Code.  (*Id.*, ¶¶ 23–26, PageID #192–93; *see State v. Ruff,* 143 Ohio St. 3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13.)  Similarly, the State appellate court determined that Counts 5 and 6 should not merge with Count 4 because they were committed by separate acts.  (*Id.*, ¶ 33, PageID #195–96.)  If offenses are committed separately, Section 2941.25(B) permits a conviction a defendant for multiple, distinct offenses. (*Id.*, PageID #191.)  Also, the appelate court struck Mr. Washington's reply brief because the Ohio Rules of Appellate Procedure do not permit appellants to present assignments of error in a reply brief.  (*Id.*, PageID #190 n.1.)

4

On April 22, 2021, Mr. Washington, proceeding *pro se*, filed a notice of appeal to the Ohio Supreme Court.  (*Id.*, PageID #197.)  In his memorandum in support of jurisdiction, Mr. Washington raised one issue, relating to the merger of the counts at sentencing:

> The Trial Court violated Appellant's rights against Double Jeopardy, as codified in <u>O.R.C. 2941.25</u>, as well as violated his rights to due process of the law by convicting and punishing him based on conduct and a set of offenses determined to be allied to support enhanced punishment under one Ohio statute; then, in the same case, punished him based on the same conduct and same set of offenses determined to <u>NOT</u> be allied to support enhanced punishment under another Ohio statute. Furthermore, the two statutes are in conflict and do not harmonize.

(*Id.*, PageID #200 (emphasis in original).)  The Ohio Supreme Court declined review. (*Id.*, PageID #220.)

## C.    Application to Reopen

On September 15, 2021, Mr. Washington filed an application to reopen his direct appeal.  (*Id.*, PageID #221.)  He asserted five assignments of error, each claiming that his previous appellate counsel was ineffective.  (*Id.*, PageID #229.) Later, Mr. Washington sought to amend his application, alleging that his appellate counsel failed to mention that he was unable to view the courtroom proceedings through a contemporaneous video proceeding.  (*Id.*, PageID #394.)

However, Mr. Washington's application was untimely.  (*Id.*, PageID #396.) Under Rule 26(B)(1) of the Ohio Rules of Appellate Procedure, an application for reopening must be "filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."  The State appellate court released its decision

5

on March 12, 2021.  (ECF No. 7-1, PageID #185.)  Therefore, Mr. Washington's application for reopening was due no later than June 10, 2021, some two months before it was filed.

In a memorandum in support of his application to reopen, Mr. Washington attempted to show good cause for his untimely filing.  (*Id.*, PageID #230–32.)  He argued that he mailed his application to the courthouse of the State appellate court on June 2, 2021 and pointed to statutory language in Rule 26(B) of the Ohio Rules of Appellate Procedure, which states that the application must be "filed in the court of appeals where the appeal was decided."  (*Id.*, PageID #230.)  However, the State appellate court does not have a clerk's office at the address to which Mr. Washington mailed his application.  (*Id.*, PageID #235.)  The court notified him of this error during a phone call on June 25, 2021 and in a letter on June 29, 2021.  (*Id.,* PageID #231 & #235.)  Two months after this notice, Mr. Washington properly filed his application.  (*Id.*, PageID #397.)

The State appellate court determined that Mr. Washington's two-month delay undermined his good cause argument.  (*Id.*)  Also, it noted that good cause is generally not found in cases involving one's ignorance of appellate law and procedure.  (*Id.*)  Because Mr. Washington could not show good cause for his delay and the time frame to file an application to reopen is strictly enforced, the State appellate court denied his application due to its untimeliness.  (*Id.*, PageID #396–97.)  Additionally, the court determined that Mr. Washington failed to demonstrate ineffective assistance of appellate counsel even on review of his claims.  (*Id.*, PageID #398–406.)

6

On November 19, 2021, after his application for reopening was denied, Mr. Washington filed a motion for reconsideration in the State appellate court. (*Id.*, PageID #407.)  Again, he asserted that he misinterpreted the language in Rule 26(B), requiring him to "file[] in the court of appeals where the appeal was decided" and argued that this confusion was "something out of Appellant's control."  (*Id.*, PageID #409.)  On December 17, 2021, the State appellate court denied this motion because Mr. Washington "failed to present an issue that was not fully considered by this court" and noted that, despite its determination of untimeliness, the "court did, in fact, consider and reject the merits of appellant's arguments."  (*Id.*, PageID #419–20.)

On January 27, 2022, Mr. Washington filed a notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court.  (*Id.*, PageID #421 & #423.)  Mr. Washington raised two claims of error:  (1) the "Appellate Court erred by not filing Appellant's timely 26(B) Application for Reopening his Direct Appeal," and (2) denial of reopening the direct appeal due to ineffective assistance of appellate counsel. (*Id.*, PageID #424.)  The Ohio Supreme Court declined review.  (*Id.*, PageID #459.)

### D.    Habeas Petition

On September 1, 2022, Mr. Washington filed a petition for a writ of habeas corpus in federal court, requesting a new trial and sentencing.  (ECF No. 1, PageID #23.)  Petitioner asserts seven grounds for relief.  (*Id.*, PageID #9–17.)

Under Local Rule 72.2, the case was referred to a Magistrate Judge, who issued a Report and Recommendation.  (ECF No. 11.)  The Magistrate Judge recommends that the Court deny the petition because Ground One is non-cognizable in a federal

habeas proceeding (*id.*, PageID #1096–97), and Grounds Two through Seven are procedurally defaulted and also fail on the merits. (*Id.*, PageID #1097–1114) Also, the Magistrate Judge recommends that the Court not grant a certificate of appealability. (*Id.*, PageID #1115–16.) Petitioner timely objected to the Report and Recommendation. (ECF No. 16.)

## STANDARD OF REVIEW

A district court judge may designate a magistrate judge to submit "proposed findings of fact and recommendations for the disposition, by a judge of the court," 28 U.S.C. § 636(b)(1)(B), of a petition for a writ of habeas corpus, which the Court does by local rule, *see* L.R. 72.2. When reviewing a report and recommendation, if a party timely objects, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). Objections must be specific, not general, and should direct the Court's attention to a particular dispute. *See Howard v. Secretary of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues— factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

On review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Importantly, a court's job is not to conduct a free-wheeling

examination of the entire report and recommendation, but only to address any specific objections that a party has advanced to some identified portion of it. Accordingly, the Court's task is to review the Magistrate Judge's Report and Recommendation *de novo*, based on the specific objections Petitioner raises.

## ANALYSIS

Where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States," he is entitled to a writ of habeas corpus. 28 U.S.C. §§ 2241(c)(3) & 2254(a). At bottom, the writ tests the fundamental fairness of the State court proceedings resulting in the deprivation of the petitioner's liberty. *See, e.g., Brown v. Allen*, 344 U.S. 443, 463 (1953); *Powell v. Collins*, 332 F.3d 376, 388 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000).

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"With the AEDPA, Congress limited the source of law for habeas relief to cases decided by the United States Supreme Court." *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A State court adjudication is "contrary to" Supreme Court precedent under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result.  *Williams*, 529 U.S. at 405.  "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [the] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).

Under Section 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Williams*, 529 U.S. at 410).  A State court adjudication involves "an unreasonable application of" Supreme Court precedent under Section 2254(d)(1) if: (1) the State court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular State prisoner's case; or (2) the State court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *See Williams*, 529 U.S. at 407.

## I.    Failure to Merge Counts (Ground One)

In his first ground for relief, Petitioner maintains that the "trial court failed to merge [C]ounts 2 and 3 with [C]ount 1, and [C]ounts 5 and 6 with [C]ount 4."  (ECF No. 1, PageID #9.)  Petitioner states that the trial court "knowingly merged [C]ount[s] 2 and 3 but failed to merge [C]ount 1.  As well as [C]ount 5 and 6 were merged[,] but

not with [C]ount 4." (*Id.*)  Petitioner alleges this failure to merge the counts violated his rights under the Due Process Clause and the Double Jeopardy Clause.  (*Id.*)

The Magistrate Judge recommends that the Court dismiss Ground One because it is not cognizable in a federal habeas proceeding.  (ECF No. 11, PageID #1096–97.)  As the Magistrate Judge noted (*id.*, PageID #1096), the State appellate court held that Ohio law authorized cumulative punishments for Petitioner's crimes. (ECF No. 7-1, PageID ¶¶ 23–33, PageID #192–96).  Specifically, the State appellate court determined that each charge was associated with a separate and identifiable harm; therefore, sentencing on each charge separately was appropriate.  (ECF No. 7-1, PageID #192–96.)

Petitioner objects to the Report and Recommendation on Ground One.  (ECF No. 16, PageID #1129.)  He maintains that he committed the relevant offenses at the same time, with the same conduct and intent.  (*Id.*, PageID #1130.)  Further, he argues that the sexual motivation specifications attached to Counts 2, 3, 5, and 6 "demonstrate that they were driven by the same purpose [as Counts 1 and 4, respectively], which should require merger for sentencing purposes." (*Id.*)

The Double Jeopardy Clause of the Fifth Amendment guarantees that "no person shall . . . be subject for the same offence to be twice put in jeopardy."  U.S. Const. amend V.   The Double Jeopardy Clause "protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than

prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Therefore, to determine whether a sentence entails multiple punishments for the same offense, the Court must look to the intent of the State legislature that enacted the statute. *Banner v. Davis*, 886 F.2d 777, 779–80 (6th Cir. 1989).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. 62, 67–68 (1991). Accordingly, federal habeas courts defer to State courts' constructions of State statutes regarding cumulative sentencing. *See O'Brien v. Skinner*, 414 U.S. 524, 531 (1974). If a State court has found that its State legislature intended cumulative punishments, "a federal court is bound by a state court's construction of that state's own statutes," and must defer to that construction. *Banner*, 886 F.2d at 780. Therefore, the interpretation of State sentencing laws is not cognizable on federal habeas review. *See Randle v. Turner*, No. 3:19-cv-1166, 2021 WL 3239447, at *1–2 (N.D. Ohio July 30, 2021).

Here, the State appellate court relied on a decision from the Ohio Supreme Court regarding Section 2941.25(B) of the Ohio Revised Code, the State statute governing multiple counts, to determine whether the counts in Petitioner's case should merge. (ECF No. 7-1, ¶ 20, PageID #191.) Based on its application of Section 2941.25(B) to the circumstances of Petitioner's case, the State appellate court determined that the sentences should not merge under the statute. (*Id.*, ¶¶ 23–33,

PageID #192–96.) The Court must defer to this determination. *See Banner,* 886 F.2d at 780.

For these reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **OVERRULES** Petitioner's objections as to Ground One.

## II.    Grounds Two Through Seven

Petitioner's remaining grounds for relief relate to his absence from the courtroom on the first day of the trial and the effectiveness of his counsel's assistance. The Magistrate Judge recommends that the Court dismiss these grounds based on procedural default and failure on the merits. For the following reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation as to Grounds Two through Seven and **OVERRULES** Petitioner's objections.

### II.A.    Procedural Default

Before the Court can evaluate the merits of a claim raised in a habeas petition, a petitioner must establish that the claim was not procedurally defaulted. Generally, a petitioner must demonstrate that he has "exhaust[ed] all available opportunities to pursue his claim in state court." *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. 2019). Further, a federal court may not consider a habeas petition unless a State prisoner has presented his claim to the State courts in accordance with the State's procedural rules. *See Shinn v. Ramirez*, 596 U.S. 366, 371 (2022).

A petitioner may procedurally default a claim by failing to raise it in State court and pursue it through the State's appellate review procedures. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Where the petitioner has failed to do so,

and State courts would dismiss or deny the claim on that basis, the federal court must do the same because the petitioner has procedurally defaulted the claim. *Shinn*, 596 U.S. at 371.  If State law no longer allows the petitioner to raise or appeal the claim at the time of the habeas petition, the claim is procedurally defaulted. *Id.* Procedural default may be excused where a petitioner can show that an external factor prevented him from complying with the procedural rule at issue, through no fault of his own, and that the alleged constitutional violation resulted in actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

## II.B.   Report and Recommendation

In her Report and Recommendation, the Magistrate Judge explained that Grounds Two through Seven are procedurally defaulted because Petitioner did not properly raise them in State court proceedings.  (ECF No. 11, PageID #1098–1113.) Petitioner objects to these findings and argues that his procedural default should be excused because of his efforts to timely file, external factors beyond his control, prejudice to him, and fundamental fairness.  (ECF No. 16, PageID #1140–41.)  He maintains that he timely mailed his application for reopening, but "due to an addressing issue and a failure in mail delivery beyond his control, his filing was not accepted." (*Id.*, PageID #1140.)  He argues that he made a good faith effort to file his application to reopen his direct appeal and that "[f]undamental fairness requires a review" of his claims because his rights would be unjustly denied if the Court strictly enforced procedural requirements.  (*Id.*, PageID #1143.)  Additionally, Petitioner contends that there was prejudice to him because if the State appellate court had

accepted his application to reopen, "his claims would have been properly reviewed, and he would not have been procedurally barred." (*Id.*, PageID #1141.)

### II.C.   The State-Court Record

Petitioner did not raise Grounds Two through Seven in his direct appeal in the State appellate court—he only raised the failure-to-merge issue discussed in Ground One.  (ECF No. 7-1, PageID #139.)  On direct appeal, Petitioner attempted to raise Grounds Two and Five in his reply brief.  (*Id.,* PageID #173.)  But the State appellate court struck these claims because the Ohio Rules of Appelate Procedure do not allow appellants to raise new claims in a reply brief.  (*Id.*, PageID #190 n.1.)  Then, Petitioner only pursued his failure-to-merge claim before the Ohio Supreme Court. (*Id.*, PageID #200.)  "[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review." *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002); *see also Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) (noting that a claim is procedurally defaulted when a petitioner does not exhaust available State remedies or when a State court does not consider a claim because of its procedural rules).

After the close of his direct appeal, Petitioner filed an application to reopen under Rule 26(B) of the Ohio Rules of Appellate Procedure, claiming that his appellate counsel failed to raise issues that correspond to Grounds Two through Six in this habeas petition.  (ECF No. 7-1, PageID #229.)  Also, he sought to amend his application to include an issue corresponding to Ground Seven in this petition.  (*Id.*, PageID #394.)  However, the State appellate court found the application untimely.

(*Id.*, PageID #396.)   Accordingly, Grounds Two through Seven are procedurally defaulted because he did not properly raise them in his direct appeal.

### II.D.  Petitioner's Objections

Here, as he did in his application to reopen, Petitioner objects that he had good cause for his delay in filing the application because he sent his application to the wrong address.   (ECF No. 16, PageID #1140–43.)   The State appellate court considered and rejected this argument.   The State appellate court held that Petitioner's application was untimely and rejected his good-cause argument because he waited two months to resend his application.   (ECF No. 7-1, PageID #397.)   Additionally, the court noted that "good cause is not found in an individual's ignorance in appellate law and procedure."   (*Id.*)   Later, the Ohio Supreme Court declined to accept jurisdiction over the application to reopen.   (*Id.*, PageID #459.)   Because the Ohio Supreme Court did not provide a reason for declining to review Petitioner's case, the Court assumes it applied a procedural bar.  *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (citing *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996)).   Because Petitioner's application for reopening was procedurally defaulted in State court, "that procedural default carries over to federal court and precludes habeas review of that claim in federal court."  *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).

Federal courts "must defer to a state court's interpretation of its own rules of evidence and procedure."  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Therefore, the Court must defer to the State appellate court's determination that his application was

untimely under Rule 26(B), an Ohio Rule of Appellate Procedure.  Untimeliness under Rule 26(B) results in a procedural default of a habeas claim.  *See Parker v. Bagley*, 543 F.3d 859, 862 (6th Cir. 2008).  Accordingly, Petitioner's arguments in Grounds Two through Seven are procedurally defaulted, and the Court has no occasion to consider the merits of Petitioner's remaining grounds for relief.

### CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding.  28 U.S.C. § 2253(c)(1)(A).  A court may issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This means that the petitioner must show that reasonable jurists could find the district court's determination of the relevant constitutional claims debatable or incorrect.  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004).  The petitioner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Based on this standard, Petitioner does not qualify for a certificate of appealability.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist [cannot] conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because the majority of Petitioner's claims are procedurally defaulted, and because the remaining claim is

not cognizable on federal habeas review, Petitioner is not entitled to a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections (ECF No. 16), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 11), and **DENIES** and **DISMISSES** the petition for a writ of habeas corpus (ECF No. 1). Further, the Court **DECLINES** to issue a certificate of appealability under 28 U.S.C. § 2253(c).

**SO ORDERED.**

Dated: August 29, 2025

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

18